Argued and submitted October 11, 2002, reversed and remanded February 5, 2003

In the Matter of the Compensation of
Delinda S. French-Davis, Claimant.

Delinda S. FRENCH-DAVIS,
*Petitioner,*

*v.*

GRAND CENTRAL BOWL
and Liberty Northwest Insurance Corporation,
*Respondents.*

00-04541; A114462

62 P3d 865

Patrick K. Cougill argued the cause for petitioner. With him on the brief was Welch, Bruun & Green.

David O. Wilson argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

■    The Workers' Compensation Board (board) dismissed claimant's request for a hearing to challenge insurer's failure to close her claim. The board ruled that the request was untimely. Claimant seeks judicial review. Because the parties do not dispute the facts, we review only for legal error. ORS 656.298(7); ORS 183.482(8)(a). We reverse.

Claimant suffered a work-related knee injury in 1991. Her employer's insurer (insurer) accepted the injury as a disabling contusion. After surgery, claimant developed low back pain, assertedly because the knee injury and treatment for it caused her to alter her gait. Insurer's consulting physician, however, could find no diagnosable low back condition so, in February 1994, insurer issued a notice of closure awarding permanent partial disability based solely on the knee injury.

Claimant's back pain continued. In May 1995, she and insurer entered into a stipulation by which insurer agreed to accept the back injury and process it under the workers' compensation statutes. After a 31-month delay, the cause of which does not appear in the record, insurer in December 1997 issued a formal notice of claim acceptance that included both the knee and back injuries. However, insurer thereafter took no further action. In particular, it did not reevaluate claimant's earlier acceptance to include the back injury and then reclose the claim on those broadened terms.

On October 26, 1998, claimant made a settlement offer and, in the alternative, requested "that the lumbar strain condition be processed to closure at the earliest convenient opportunity." Insurer did not respond and more time passed. On April 10, 2000, claimant again submitted to insurer a settlement offer and, alternatively, "a request to rate impairment and close the claim." Insurer again failed to respond, and, on June 13, 2000, claimant requested a hearing to challenge that failure.

The administrative law judge (ALJ) identified two issues at the hearing: first, whether employer had an obligation to reopen the claim in response to the newly accepted back condition; and second, if so, whether claimant timely made her request for a hearing to contest insurer's failure to perform that obligation. The first issue depended on whether acceptance of the claim occurred when insurer entered into the stipulation with claimant in May 1995, in which case insurer had no obligation to reopen the claim because the statute requiring that action, ORS 656.262(7)(c),[1] was not yet in effect; or if it occurred when insurer issued a formal notice of acceptance of the back condition, which occurred 31 months later, after the statute took effect. The ALJ held that insurer accepted the new condition at the time of the stipulation, before the statute took effect, so reopening was not required. The ALJ therefore had no occasion to decide whether claimant had timely requested a hearing to challenge insurer's failure to reopen.

Claimant appealed to the board, which concluded, contrary to the ALJ's opinion, that acceptance occurred only with the formal action by insurer, by which time the statute was in effect and insurer *did* have an obligation to reopen the claim.[2] The board therefore had to decide whether claimant had timely requested a hearing to challenge insurer's inaction. Insurer maintained that the request was not timely because the triggering date for the two-year limitation period began when insurer formally accepted the post-closure condition in December 1997 and the request occurred in June 2000. Claimant argued that the triggering event was insurer's failure to respond to claimant's requests for closure in October 1998, so the June 2000 request was timely.

The statute at issue, ORS 656.319(6), provides:

"A hearing for failure to process [a claim] or an allegation that the claim was processed incorrectly shall not be

---

[1] ORS 656.262(7)(c) provides, in part, that, "[i]f a condition is found compensable after claim closure, the insurer * * * shall reopen the claim for processing regarding that condition."

[2] Insurer does not challenge the board's conclusion, and we express no opinion on it.

granted unless the request for hearing is filed within two years after the alleged action or inaction occurred."

The board, agreeing with insurer, concluded that

"the alleged inaction that triggered the running of the two-year period * * * occurred in December 1997 when the insurer issued its acceptance notice. At that time, ORS 656.262(7)(c) unambiguously provided that, if, as in this case, a condition was found to be compensable after claim closure, the insurer 'shall' reopen the claim for processing. Given the mandatory language of the statute, we conclude that the insurer's duty of reopening the claim for processing of the lumbar condition arose upon its acceptance of that condition in December 1997."

Claimant submitted a motion for reconsideration, pointing out that in some circumstances—for example, when a condition does not stabilize and closure occurs more than two years after acceptance—the board's interpretation of ORS 656.319(6) would lead to an absurd result: a claimant could be precluded from requesting a hearing to challenge an insurer's failure to close a claim even before such closure was possible. On reconsideration, the board held:

"While there may be circumstances in which the triggering date for the two-year period in ORS 656.319(6) may be a date other than the date of acceptance of a 'post-closure' new condition, under the particular circumstances of *this* claim, we continue to find that the date of acceptance is the triggering date for purposes of determining the two-year period. * * * It was the insurer's inaction which began in December 1997 that ultimately led to claimant's processing requests in October 1998 and April 2000."

(Emphasis in original.) The board did not specify what circumstances might result in a different triggering date or what circumstances in the present case led to the conclusion that the triggering date was the date of acceptance.

■ Resolving this case requires interpretation of ORS 656.319(6). In particular, we must identify the "inaction" that amounts to a "failure to process" a claim so as to begin the two-year limitation period, and we must decide when that "inaction occurred." ORS 656.319(6). The difficulty with that analysis is that inaction, as the term is usually understood,

refers to something that does *not* occur. Generally, inaction is ongoing, long term, and passive—for example, a child's inaction in not telephoning her parents, or a law firm's inaction in failing to upgrade its information technology. A different type of inaction, however, consists of specific and particular *events* or *occurrences*, what might be called (oxymoronically) affirmative inaction—for example, a child's failure to respond to a parent's request to telephone at 7:00 p.m. on Thanksgiving, or a party's failure to file a responsive pleading within a specific period of time. That type of inaction is a failure to perform a time-specific, discrete duty, request or obligation. The inaction in ORS 656.319(6) is clearly of the second kind; only that second kind of inaction can "occur." By its very nature, an inaction that marks the starting point of a fixed statute of limitations could not be ongoing or the time period would never expire.

Thus, the inaction that begins the two-year period must be some identifiable, discrete event or occurrence, in particular a failure to perform a time-specific duty. In the present case, the board identified that inaction as insurer's issuance of the notice of acceptance in December 1997. More precisely, the board reasoned that, when insurer found the back condition to be compensable, that finding immediately imposed a duty on insurer to process the broadened claim by virtue of ORS 656.262(7)(c), which provides that, "[i]f a condition is found compensable after claim closure, the insurer * * * shall reopen the claim for processing regarding that condition." By not immediately discharging its duty to reopen, insurer committed the inaction that started the two-year period.

■ That theory is internally incoherent in several respects. In identifying insurer's "inaction" as its failure to "reopen the claim for processing," the board overlooked the fact that sending claimant the notice of acceptance was proof that insurer *had* reopened the claim and *was* processing it. The obligation to send a notice of acceptance derives from ORS 656.262(6), a section of the statute describing "processing of claims." Indeed, an insurer's or self-insured employer's duties in processing an accepted claim encompass a series of events beginning when it receives notice of a workplace injury and ending with claim closure. *See* ORS 656.262; ORS

656.268. Those duties include sending a notice of acceptance, ORS 656.262(6); paying time loss benefits when authorized by an attending physician, ORS 656.262(4)(a); determining eligibility for vocational assistance, ORS 656.340(1); determining whether the claimant has a permanent partial disability, ORS 656.268; and, if so, determining the extent of that disability once the claimant has become medically stationary, ORS 656.268(1).

Thus, insurer could not have triggered the two-year time limitation by notifying claimant of acceptance because that acceptance imposed only a duty to reopen and process the claim—a duty that insurer did not fail to perform. If the inaction was insurer's failure to reopen the claim on acceptance, then that inaction never happened.

Further, as claimant argued and the board apparently acknowledged on reconsideration, if an insurer begins the two-year limitation period by notifying a claimant of acceptance, then in any case where more than two years elapse between acceptance and closure, a claimant will have no opportunity to challenge an insurer's failure either to close or refuse to close a claim. For at least two reasons, we believe that the legislature could not have intended such an outcome. First, it would lead to situations in which a claimant who is not medically stationary (or is otherwise not ready for closure) within two years of acceptance could never compel an insurer either to close or refuse to close a claim. In such a situation, the insurer could simply do nothing for two years and a claimant would have no remedy.

Second, such an interpretation of ORS 656.319(6) is inconsistent with another statute on the same subject. ORS 656.268(5)(b) (1999)[3] provided:

> "If the worker has returned to work but the insurer or self-insured employer has not issued a notice of closure, the worker may request closure. Within 10 days of receipt of a written request from the worker, the insurer or self-insured employer shall issue a notice of closure if the requirements

---

[3] ORS 656.268 was amended in 2001. The words, "the worker has returned to work but" were deleted from the first sentence. Or Laws 2001, ch 339, § 1.

of this section have been met or a notice of refusal to close if the requirements of this section have not been met."

If ORS 656.319(6) means that an insurer's duty to process a claim to closure arises automatically on acceptance, then ORS 656.268(5)(b) would be entirely superfluous; no worker would have to request closure because that request would occur as a matter of law on acceptance.

Based on the textual and contextual difficulties inherent in the board's interpretation of ORS 656.319(6), as well as the nature of claim processing delineated by other provisions of chapter 656, we conclude that the board erred when it held that claimant's two-year period began to run when her claim was accepted in December 1997. The two-year period must be triggered by some affirmative inaction, that is, by some failure to perform a particular, time-sensitive duty. For the reasons explained above, that action could not be sending a notice of acceptance.

A more logical solution, one that recognizes the fact that claim processing involves a potentially long-term sequence of steps leading to closure and that also conforms to the text of both ORS 656.319(6) and ORS 656.268, identifies the key event as claimant's request for closure. That event imposes an easily identifiable, discrete, time-sensitive obligation on the insurer: it had to respond within 10 days by issuing either a notice of closure or of refusal to close. ORS 656.268(5)(b).[4] When those 10 days elapsed, insurer failed to perform its obligation. That failure constituted the inaction that began the two-year period specified in ORS 656.319(6).

Claimant's first request for closure occurred on October 26, 1998. Insurer had a duty to respond by November 5. ORS 656.268(5)(b). It failed to do so. That "failure to process" (*i.e.*, failure to carry out one of the steps in the processing

---

[4] Before the 2001 amendment to ORS 656.268(5)(b) described above, 186 Or App at 286 n 3, a claimant's right to request closure under ORS 656.268(5)(b) depended on the claimant having "returned to work." Although the record in this case does not disclose whether claimant had done so, she argued before this court that her letter requesting closure followed the procedure set out in ORS 656.268(5)(b), and insurer does not dispute that assertion. We therefore conclude that she had returned to work.

sequence) constituted the "alleged * * * inaction" that claimant sought to challenge at a hearing. ORS 656.319(6). Claimant had until November 5, 2000, to request a hearing. She did so on June 13, 2000. That request was timely, and the board erred in dismissing it.

Reversed and remanded.