Argued and submitted March 17, 2011, reversed September 26, 2012

In the Matter of the Compensation of
Joy M. Walker, Claimant.
PROVIDENCE HEALTH SYSTEM OREGON,
*Petitioner,*

*v.*

Joy M. WALKER,
*Respondent.*

Workers' Compensation Board
0900276; A145132

289 P3d 256

Theodore P. Heus argued the cause for petitioner. With him on the briefs was Scheminske & Lyons, LLP.

Ronald A. Fontana argued the cause for respondent. With him on the brief was Fontana & Takaro, P.C.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

DUNCAN, J.

**DUNCAN, J.**

In this workers' compensation proceeding, we are asked to resolve three issues: (1) whether employer was obligated under ORS 656.262(7)(c)[1] to reopen and process claimant's omitted condition claims after an administrative law judge (ALJ) had found the conditions compensable but while employer's appeal of the ALJ order was pending; (2) if employer was so obligated, whether employer fulfilled those obligations; and (3) if employer was so obligated but did not fulfill its obligations, whether claimant is entitled to attorney fees and a penalty because employer lacked legitimate doubt about its obligations.[2]

We set out the pertinent procedural facts in some detail. In April 2004, claimant, who worked as a certified nursing assistant in an elder-care facility, filed a workers' compensation claim with employer, reporting symptoms of "acute anxiety [with] chest pain [and] headaches" after having reported narcotic misuse by a coworker and then having received a disciplinary sanction. In May 2004, employer denied the claim, which it characterized as being for a "condition involving Stress/Anxiety."

Claimant contested the denial of her claim. After a hearing, ALJ Mills, in an order dated August 8, 2005, set aside employer's denial of claimant's "stress claim" and remanded the claim for processing. Employer appealed the order to the Workers' Compensation Board (board), and the board affirmed ALJ Mills's order. Employer then sought review in this court, and, in January 2007, we affirmed the board's order without opinion. *Providence Health System v. Walker*, 210 Or App 466, 151 P3d 960 (2007).

---

[1] ORS 656.262(7)(c) provides:

"When an insurer or self-insured employer determines that the claim qualifies for claim closure, the insurer or self-insured employer shall issue at claim closure an updated notice of acceptance that specifies which conditions are compensable. The procedures specified in subsection (6)(d) of this section apply to this notice. Any objection to the updated notice or appeal of denied conditions shall not delay claim closure pursuant to ORS 656.268. If a condition is found compensable after claim closure, the insurer or self-insured employer shall reopen the claim for processing regarding that condition."

[2] Claimant relies on the following statutes that provide for penalties and attorney fees for specific claims-processing violations: ORS 656.262(11), ORS 656.268(5)(d), and ORS 656.382(1). We set out the pertinent statutory wording below. 252 Or App at 504 n 7.

In July 2007, employer accepted a claim for "disabling anxiety with depression." In August 2007, claimant requested that employer issue a "modified notice of acceptance to include major depression and panic disorder without agoraphobia" and that employer issue a notice of closure for those conditions. In October 2007, employer declined to modify its acceptance of the claim to include major depression and panic disorder without agoraphobia, which it characterized as omitted conditions. In January 2008, employer issued a notice of closure and an "updated notice of acceptance at closure," which included the originally accepted condition "disabling anxiety with depression" only. The notice of claim closure stated that claimant's condition had become medically stationary on August 19, 2004, and awarded temporary total disability from April 8 through August 19, 2004, and no permanent partial disability.

Claimant contested the denial of her omitted medical condition claims for major depression and panic disorder and contended that employer unreasonably refused to close her claim in August 2007. In an order dated September 9, 2008, ALJ Mills concluded that the denial of claimant's omitted condition claims for major depression and panic disorder should be set aside but upheld the denial of claim closure based on employer's argument that it had insufficient evidence for closure at the time of the request. Employer appealed that order to the board. While employer's appeal to the board was pending, on October 9, 2008, claimant again requested that employer issue a notice of closure on claimant's major depression and panic disorder claims. Employer declined to close those claims because, in employer's view, the claims were not open. Employer's position appears to have been that only final orders operate to reopen claims and that ALJ Mills's September 2008 order, which had been appealed to the board, was not final and so did not require reopening or closure of the claims. In an order dated March 23, 2009, the board affirmed ALJ Mill's September 2008 order. Employer did not seek judicial review and, accordingly, the set-aside of employer's denial of claimant's omitted condition claims became final.

Claimant subsequently sought attorney fees and penalties based on employer's failure to process her

omitted condition claims. The matter was submitted to ALJ McCullough, who, in an order issued on June 11, 2009, noted that "[t]he threshold question is whether [employer] was required by law to reopen claimant's claim after the issuance of the September 9, 2008 Opinion and Order, even though the Opinion and Order was on appeal." More particularly, ALJ McCullough examined ORS 656.262(7)(c), which provides, in part:

"If a condition is found compensable after claim closure, the insurer or self-insured employer shall reopen the claim for processing regarding that condition."

ALJ McCullough observed that the determinative issue was *when* an employer's obligation to reopen a claim arises and, to address that issue, the key phrase was "found compensable." Claimant contended that an employer's obligation to reopen arises upon any litigation order that includes a determination of compensability, regardless of whether the order is appealed. Employer, on the other hand, contended that a condition is not "found compensable" until a compensability determination has become final, either because all appeals and judicial review have been exhausted or because no further appeal has been timely pursued. ALJ McCullough reviewed orders of the board and opinions of the appellate courts addressing similar, but not identical, questions.

Ultimately, ALJ McCullough concluded as follows:

"I am inclined to conclude that claimant's interpretation of ORS 656.262(7)(c) is the correct one, and that [employer] should have reopened claimant's claim and then re-closed it following the issuance of the September 9, 2008 Opinion and Order, even though it had appealed the Opinion and Order to the Board."

ALJ McCullough did not, however, hold employer liable for penalties and attorney fees related to the failure to reopen and reclose the omitted condition claims. Given the "lack of explicit language in ORS 656.262(7)(c)" and lack of clarity in the case law, ALJ McCullough found that employer had a "legitimate doubt" about its obligations while its appeal of ALJ Mills's September 2008 order was pending. And, because of that legitimate doubt, ALJ McCullough concluded that employer's failure to reopen and reclose the omitted condition claims was not unreasonable and, hence,

did not give rise to penalties or attorney fees under ORS 656.262(11), ORS 656.268(5)(d), or ORS 656.382(1).

Claimant appealed ALJ McCullough's order to the board. In an order dated March 2, 2010, the board held that ALJ McCullough had correctly concluded that employer was required to reopen and process claimant's omitted condition claims after its denial was set aside by ALJ Mills in September 2008. Like ALJ McCullough, the board centered its analysis on the meaning of the phrase "found compensable" in ORS 656.262(7)(c) and concluded that, when ALJ Mills set aside the denial, the omitted conditions were "found compensable" for purposes of the statute. Although the board came to the same conclusion as ALJ McCullough on the issue of employer's obligation to process the omitted condition claims pending litigation of compensability, a majority of the board came to a different conclusion than ALJ McCullough on the issue of one of the penalties and on attorney fees. Unlike ALJ McCullough, the board's majority concluded that employer's resistance to the payment of compensation was unreasonable because, from a legal standpoint, employer had no legitimate doubt as to its liability. Accordingly, the board ordered that employer pay a penalty under ORS 656.268(5)(d) for unreasonable refusal to close the omitted condition claims and attorney fees under ORS 656.262(11)(a) for unreasonable claim processing and ORS 656.382(1) for unreasonable resistance to the payment of compensation. One board member dissented in part and would have concluded that employer's resistance to payment was not unreasonable because there had been no previous clear conclusion that ORS 656.262(7)(c) required reopening a claim after a nonfinal compensability determination.

Employer petitions for judicial review of the board's order, raising four assignments of error. In its first assignment of error, employer argues that the board erred as a matter of law by interpreting ORS 656.262(7)(c) to require it to reopen and process the omitted condition claims found compensable by ALJ Mills's 2008 order despite employer's pending appeal of that order.

In its second assignment of error, employer argues that, if the board correctly interpreted ORS 656.262(7)(c),

then the board's "implied factual finding" that employer failed to reopen and process claimant's omitted condition claims upon issuance of ALJ Mills's 2008 order is not supported by "the board's findings and interpretation of the law." Employer reasons that the board held that any litigation order results in *de jure*, if involuntary, acceptance of a claim and that acceptance, whether voluntary or not, establishes reopening and processing. Accordingly, to the extent that the board's assessment of a penalty and attorney fees was based on a finding that employer failed to reopen or process the omitted condition claims, that assessment is not supported by substantial reason.

In its third and fourth assignments of error, employer argues that, if the board correctly interpreted ORS 656.262(7)(c) and employer did not reopen and process the omitted condition claims as a matter of law, the board erroneously concluded that employer did not have legitimate doubt about its claim-processing obligations pending its appeal of ALJ Mills's 2008 order. Accordingly, the penalty and attorney fees assessed by the board should be reversed.

We first consider whether ORS 656.262(7)(c) requires reopening and processing of an omitted condition claim upon the issuance of an order setting aside the denial of that claim when an appeal of that order is pending. This is a question of statutory construction that we review for legal error using the principles set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Our goal is to determine the intended meaning of the statute by examining its text in context, considering any relevant legislative history, and proceeding, if necessary, to general maxims of statutory construction. *Id.*

ORS 656.262(7)(c) provides:

"When an insurer or self-insured employer determines that the claim qualifies for claim closure, the insurer or self-insured employer shall issue at claim closure an updated notice of acceptance that specifies which conditions are compensable. The procedures specified in subsection (6)(d) of this section apply to this notice. Any objection to the updated notice or appeal of denied conditions shall not

delay claim closure pursuant to ORS 656.268. *If a condition is found compensable after claim closure, the insurer or self-insured employer shall reopen the claim for processing regarding that condition.*"

(Emphasis added.)

The phrase "found compensable," standing alone, could plausibly refer to any compensability finding or only to final compensability findings. Various textual clues suggest that the legislature intended that any post-closure finding that an omitted condition is compensable would trigger an insurer's obligation to reopen the claim, regardless of whether compensability is being challenged on appeal or judicial review.

First, the legislature used the phrase "found compensable" without specifying a particular actor. As noted, the statute requires insurers to reopen claims "[i]f a condition is *found compensable* after claim closure." ORS 656.262(7)(c) (emphasis added). The statute does not identify whose "finding" triggers the insurer's obligation. The legislature's phrasing indicates an intention to avoid specifying a particular actor, that is, to include all possible actors. *See, e.g., State v. Pena*, 345 Or 198, 207, 191 P3d 659 (2008) (statute using the phrase "shall be made" did not specify which actors could move for a change of judge); *Powell v. Bunn*, 341 Or 306, 314, 142 P3d 1054 (2006) (because statute was phrased, "no person in Oregon shall be subjected to discrimination," Supreme Court understood that all actors were prohibited from engaging in discrimination); *Brentmar v. Jackson County*, 321 Or 481, 487, 900 P2d 1030 (1995) (statutes using the phrase "may be established" did not specify which actors could establish an exclusive farm use zone).

Second, the term "found" itself does not necessarily imply a particular actor or state of finality. In fact, throughout the Workers' Compensation Law, the legislature has referred to various actors making findings, many of which are subject to appeal or judicial review. *E.g.*, ORS 656.268(1)(d) (an insurer or self-insured employer shall close the worker's claim when, among other things, the "insurer or self-insured employer finds that a worker who

has been receiving total disability benefits has materially improved"); ORS 656.283(6) ("If the Administrative Law Judge finds that the claim has been closed prematurely, the Administrative Law Judge shall issue an order rescinding the notice of closure."); ORS 656.295(5) ("If the board finds that the claim has been closed prematurely, the board shall issue an order rescinding the notice of closure."); ORS 656.327(1)(b) (appeal of a director's order finding that no bona fide medical services dispute exists "shall be made directly to the [board]" and "[t]he board shall set aside or remand the order only if the board finds that the order is not supported by substantial evidence in the record").

Third—and perhaps most importantly—the legislature has not chosen to modify the term "found" in ORS 656.262(7)(c) with a term like "ultimately" and "finally" or to indicate expressly that only a final order triggers an insurer's obligation to reopen and process the claims, as it has elsewhere indicated that only final orders trigger certain results. *See* ORS 656.313(1)(b) ("If ultimately found payable under a final order, benefits withheld under this subsection shall accrue interest at the rate provided in ORS 82.010 from the date of the order appealed from through the date of payment."); *see also* ORS 656.313(3) (provider of medical services must desist from collections "until the issue of compensability of the medical services has been finally determined"); ORS 656.313(4)(a) (insurer or self-insured employer must notify medical services and health insurance providers "[w]hen the compensability issue has been finally determined").

Accordingly, the text of ORS 656.262(7)(c) appears to refer to a compensability finding by an insurer, an ALJ, the board, or an appellate court at any stage, regardless of whether any party has appealed or sought judicial review in connection with the finding.

We also examine the provisions of other related statutes that provide context for the text of ORS 656.262(7)(c). *See PGE*, 317 Or at 611 (context includes other provisions of the same statute and related statutes). Both parties contend that ORS 656.313 provides helpful context here. ORS 656.313 provides, in part:

"(1)(a)    Filing by an employer or the insurer of a request for hearing on a reconsideration order before the Hearings Division, a request for Workers' Compensation Board review or court appeal or request for review of an order of the Director of the Department of Consumer and Business Services regarding vocational assistance stays payment of the compensation, appealed except for:

"(A)    [Certain temporary disability benefits];

"(B)    [Certain permanent total disability benefits];

"(C)    [Certain death benefits];

"(D)    [Certain occupational benefits].

"(b)    If ultimately found payable under a final order, benefits withheld under this subsection shall accrue interest at the rate provided in ORS 82.010 from the date of the order appealed from through the date of payment. The board shall expedite review of appeals in which payment of compensation has been stayed under this section.

"(2)    If the board or court subsequently orders that compensation to the claimant should not have been allowed or should have been awarded in a lesser amount than awarded, the claimant shall not be obligated to repay any such compensation which was paid pending the review or appeal."

Thus, ORS 656.313, as now written, generally stays payment of compensation for all but certain specified benefits during appeal or judicial review. As to the nonspecified benefits, if a claimant ultimately is entitled to payment for stayed compensation, payment—including accrued interest— does not occur until a finding of compensability is final. In contrast, as to the specified benefits, payment occurs on an ongoing basis and is not subject to repayment by the claimant even upon an ultimate conclusion that the benefits should not have been allowed. Under ORS 656.313, payment of compensation for the benefits at issue here—permanent partial disability—was stayed pending appeal and judicial review of ALJ Mills's September 2008 order.

Employer argues that ORS 656.313(1)(a) demonstrates a legislative preference for staying compensation and that, given that preference, we should read ORS 656.262(7)(c)

to stay the reopening and processing of an omitted condition claim after a finding of compensability until all possible appeals have been taken or the time for taking them has passed. Claimant responds that such a reading is inconsistent with the express text of the statute and would require us to insert words like the following italicized phrase into the statute: "If a condition is found compensable after claim closure *and that finding has become final,* the insurer or self-insured employer shall reopen the claim for processing regarding that condition."

The parties also assert that *SAIF v. Maddox,* 295 Or 448, 667 P3d 529 (1983), in which the Supreme Court construed a previous version of ORS 656.313, sheds light on the meaning of ORS 656.262(7)(c). When *Maddox* was decided, ORS 656.313(1) (1965) provided, "Filing by an employer or the State Accident Insurance Fund Corporation of a request for review or court appeal shall not stay payment of compensation to a claimant."[3] Thus, at the time of *Maddox,* the general approach to payment of compensation pending appeal of compensability was the reverse of what it is today: payment was *not* stayed.

In *Maddox,* the parties disputed whether ongoing litigation of compensability stayed determination of the extent of disability. The Supreme Court concluded that the determination of the extent of disability was not stayed by ongoing litigation of compensability, because without determination of disability there could be no ongoing payment of compensation as directed by ORS 656.313(1) (1965). *Maddox,* 295 Or at 454.

As noted, since *Maddox* was decided, ORS 656.313 has been significantly amended. In 1990—before ORS 656.262(7)(c) was adopted in 1997—the legislature switched the presumption from *paying* compensation while appeals are pending to *staying* payment of most types of compensation while appeals are pending. Or Laws 1990, ch 2, § 23. Employer argues that the reasoning of *Maddox* at its core expresses a rule that processing and payment

---

[3] The quoted version of ORS 656.313(1) was in effect from the time the statute was first enacted in 1965 until 1990. In 1990, the statute was amended to read, in substance, the way it appears today. Or Laws 1990, ch 2, § 23.

of benefits are linked and therefore processing is required only when any resulting payments would be immediately payable. Accordingly, employer argues that, as to the specified types of compensation that the legislature has indicated are not stayed pending appeals—*i.e.*, those identified in ORS 656.313(1)(a)(A) to (D)—*Maddox* requires continued processing in order to facilitate the statutorily mandated payment of benefits. For other compensation types, including the permanent partial disability at issue here, however, employer argues that *Maddox* links payment and processing, and so because payment of those benefits is stayed pending appeals, processing must also be stayed.

Claimant, on the other hand, reads *Maddox* as requiring continued claim processing pending an appeal of compensability. In claimant's view, when the legislature amended ORS 656.313 in 1990 it was presumably aware of that holding and, if the legislature had wanted to abrogate it by statutory amendment, it would have expressly indicated that claim processing as well as payment of benefits is to be stayed pending appeal.

Both parties attempt to place more analytical weight on *Maddox* than it can bear. In *Maddox*, the court concluded that, because the legislature required compensation to continue pending appeal, it also must have intended processing to continue pending appeal—without processing, there could be no payment. Employer's inference that, now that the legislature requires payment to be stayed, processing must also be stayed, is speculative. Unlike in *Maddox*, the conclusion does not follow necessarily from the premise: although ongoing payment requires ongoing processing, there is nothing about staying payment that *requires* staying processing. Unlike in *Maddox*, here, whether processing continues or not, the express statutory requirement can be given effect. Claimant, on the other hand, would interpret *Maddox* to hold that processing must continue even when compensability is the subject of an ongoing dispute, again requiring us to divorce *Maddox* from its context: *Maddox* did not hold in a vacuum that processing continues, it held only that it must continue when payment is to continue.

We do find, however, that the current version of ORS 656.313(1)(a) sheds light on the issue before us. Claim processing does not proceed piecemeal in support of various kinds of benefits; claims are processed as a whole and can result in a variety of benefits. Although it is true that ORS 656.313(1)(a) stays payment of compensation for certain kinds of benefits while compensability is being litigated, it does not stay payment of compensation for the types of benefits specified in ORS 656.313(1)(a)(A) to (D). In order to support compensation for those specified benefits, claim processing as a whole must continue pending litigation of compensability. ORS 656.313(1) considered as a whole contemplates that claim processing will continue pending litigation of compensability.

In addition, there is other statutory context that is helpful. Context includes statements of statutory policy. *Havi Group LP v. Fyock*, 204 Or App 558, 564, 131 P3d 793 (2006). ORS 656.012 is such a statement of statutory policy.[4] *Id.* ORS 656.012(2)(c) provides that one of the objectives of

---

[4] In full, ORS 656.012 provides:

"(1) The Legislative Assembly finds that:

"(a) The performance of various industrial enterprises necessary to the enrichment and economic well-being of all the citizens of this state will inevitably involve injury to some of the workers employed in those enterprises;

"(b) The method provided by the common law for compensating injured workers involves long and costly litigation, without commensurate benefit to either the injured workers or the employers, and often requires the taxpayer to provide expensive care and support for the injured workers and their dependents; and

"(c) An exclusive, statutory system of compensation will provide the best societal measure of those injuries that bear a sufficient relationship to employment to merit incorporation of their costs into the stream of commerce.

"(2) In consequence of these findings, the objectives of the Workers' Compensation Law are declared to be as follows:

"(a) To provide, regardless of fault, sure, prompt and complete medical treatment for injured workers and fair, adequate and reasonable income benefits to injured workers and their dependents;

"(b) To provide a fair and just administrative system for delivery of medical and financial benefits to injured workers that reduces litigation and eliminates the adversary nature of the compensation proceedings, to the greatest extent practicable;

"(c) To restore the injured worker physically and economically to a self-sufficient status in an expeditious manner and to the greatest extent practicable;

the workers' compensation system is to "restore the injured worker physically and economically to a self-sufficient status in an expeditious manner and to the greatest extent practicable." The legislature has reiterated that policy elsewhere in ORS chapter 656. ORS 656.268, which governs claim closure, provides, in part:

"(1) One purpose of this chapter is to restore the injured worker as soon as possible and as near as possible to a condition of self-support and maintenance as an able-bodied worker."

Processing a claim while an appeal is pending expedites the payment of benefits once a final determination of compensability is made, thus helping an injured worker to become economically self-sufficient more quickly. ORS 656.268; ORS 656.012(2)(c).

Employer remonstrates that other objectives of the workers' compensation system, particularly as reflected in ORS 656.012(2)(b)—"reduc[ing] litigation and eliminat[ing] the adversarial nature of the compensation proceedings"— will not be served by requiring processing of omitted condition claims while the issue of compensability is not yet final. It may be true that, under our reading of the statute, some litigation will occur that otherwise would not have occurred if processing was delayed until compensability has been finally determined. We are not convinced, however, that the burden of that litigation outweighs the legislative policy in favor of expediting the economic self-sufficiency of injured workers. We also observe that the legislature did not react to *Maddox* by amending ORS 656.313 to expressly stay claim processing while compensability was being finally determined, something that might have been expected had the legislature viewed the

"(d) To encourage maximum employer implementation of accident study, analysis and prevention programs to reduce the economic loss and human suffering caused by industrial accidents; and

"(e) To provide the sole and exclusive source and means by which subject workers, their beneficiaries and anyone otherwise entitled to receive benefits on account of injuries or diseases arising out of and in the course of employment shall seek and qualify for remedies for such conditions.

"(3) In recognition that the goals and objectives of this Workers' Compensation Law are intended to benefit all citizens, it is declared that the provisions of this law shall be interpreted in an impartial and balanced manner."

effect of that processing to be inconsistent with the overall policy balance expressed in ORS chapter 656.

With that statutory context in mind, we conclude that ORS 656.262(7)(c) requires employers to reopen and process omitted condition claims that have been found compensable after claim closure, even while an appeal of that finding is pending.[5] We therefore conclude that ORS 656.262(7)(c) requires insurers and self-insured employers to reopen a claim for processing upon any finding that an omitted claim is compensable, regardless of the pendency of an appeal or review of that compensability finding. Accordingly, the board did not err in determining that employer was required to reopen and process the omitted condition claims under ORS 656.262(7)(c) after claimant's omitted conditions were found compensable by ALJ Mills in September 2008.

We turn to employer's second assignment of error, in which it challenges the board's "implied factual finding" that it failed to reopen and process claimant's omitted condition claims upon issuance of ALJ Mills's September 2008 order. Employer argues that the board reasoned, relying on *Thomas W. Clark*, 51 Van Natta 95 (1999), that a claim is accepted as a matter of law on the issuance of any litigation order. Employer further argues that "acceptance" is functionally equivalent to "reopening and processing." Extrapolating from those premises, employer argues that it must have reopened and processed claimant's omitted condition claims as a matter of law once ALJ Mills's September 2008

---

[5] The parties advance competing policy objectives that the legislature might have considered when it enacted ORS 656.262(7)(c). Employer cites the effect on employers of unnecessary processing—and the effect of attendant litigation on both parties—when compensability orders are ultimately overturned. Claimant cites the effect on claimants of additional delay in receiving benefits when compensability orders are ultimately upheld but processing of their claims has not begun until the orders are final. Claimant further notes that delay can also work to employers' detriment, for example by putting an employer in the position of paying temporary disability benefits longer than necessary because of a delayed determination that a claimant is medically stationary.

We acknowledge those competing policy concerns, but they would not change our analysis even if we were to proceed to consider what policy choice the legislature might have made. As we note in the text, the legislature did not respond to *Maddox* by amending ORS 656.313 to expressly stay claim processing pending compensability appeals, which suggests that the legislature views ongoing processing as consistent with its overall policy choices in the workers' compensation context.

order was issued even though employer did not expressly reopen, process, or accept them. Thus, to the extent that the board's assessment of a penalty and attorney fees is based on a finding that employer failed to reopen or process the omitted condition claims, that assessment is not supported by substantial reason.

Employer's argument is grounded on two premises: (1) that the board reasoned that an omitted condition claim is, by operation of law, accepted upon any litigation order finding the claim compensable and (2) that acceptance, whether occurring in fact or by operation of law, establishes that reopening and processing are occurring. We need not address the first premise because we reject the second.

Employer relies solely on *French-Davis v. Grand Central Bowl*, 186 Or App 280, 62 P3d 865 (2003), to establish that *de jure* acceptance proves that "reopening and processing" are occurring. In *French-Davis*, we held, as pertinent here, that the insurer's notice of acceptance of an omitted condition claim did not trigger the two-year limitation period in ORS 656.319(6) for seeking a hearing on failure to process a claim. *Id.* at 286. To support its argument in this case, employer offers the following quotation from *French-Davis*: "[A]cceptance was proof that insurer *had* reopened the claim and *was* processing it." *Id.* at 285 (emphasis in *French-Davis*). The full quotation from *French-Davis*, however, is as follows: "In identifying insurer's 'inaction' as its failure to 'reopen the claim for processing,' the board overlooked the fact that *sending claimant the notice of acceptance* was proof that insurer *had* reopened the claim and *was* processing it." *Id.* (first emphasis added; remaining emphasis in original). The part of the quotation that employer omits is key, because it establishes that in *French-Davis*, unlike in this case, there was evidence that the insurer had done something to process the omitted condition claim: namely sending a notice of acceptance. Nothing in *French-Davis* supports the proposition that involuntary claim acceptance resulting from a litigation order establishes that reopening and processing of the claim have occurred.[6]

---

[6] On the contrary, *French-Davis* suggests that claim acceptance, whether voluntary or involuntary, imposes affirmative duties on insurers or self-insured employers:

In this case, after the original claim was closed, claimant requested employer to issue a notice of closure on her omitted condition claims. Employer declined to close those claims on the basis that the claims were not open. That is ample evidence that employer did not reopen the claim for processing of the omitted conditions, as required by ORS 656.262(7)(c).

Having determined that the board correctly determined that employer was required to reopen and process the omitted condition claims and that it did not do so, we turn to the board's award to claimant of attorney fees and a penalty. As noted, the board's majority concluded that employer's resistance to the payment of compensation was unreasonable because, from a legal standpoint, employer had no legitimate doubt as to its liability. Accordingly, the board ordered that employer pay (1) attorney fees under ORS 656.262(11)(a) for unreasonable claim processing, (2) attorney fees under ORS 656.382(1) for unreasonable resistance to the payment of compensation, and (3) a penalty under ORS 656.268(5)(d) for unreasonable refusal to close the omitted condition claims.[7] One board member

---

"[A]n insurer's or self-insured employer's duties in processing an accepted claim encompass a series of events beginning when it receives notice of a workplace injury and ending with claim closure. *See* ORS 656.262; ORS 656.268. Those duties include sending a notice of acceptance, ORS 656.262(6); paying time loss benefits when authorized by an attending physician, ORS 656.262(4)(a); determining eligibility for vocational assistance, ORS 656.340(1); determining whether the claimant has a permanent partial disability, ORS 656.268; and, if so, determining the extent of that disability once the claimant has become medically stationary, ORS 656.268(1)."

186 Or App at 285-86.

[7] ORS 656.262(11)(a) provides, in part:

"If the insurer or self-insured employer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the insurer or self-insured employer shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees assessed under this section."

ORS 656.382(1) provides:

"If an insurer or self-insured employer refuses to pay compensation due under an order of an Administrative Law Judge, board or court, or otherwise unreasonably resists the payment of compensation, except [under a statute not applicable here], the employer or insurer shall pay to the attorney of the claimant a reasonable attorney fee as provided in subsection (2) of this section. To the extent that an employer has caused the insurer to be charged such fees, such employer may be charged with those fees."

dissented in part and would have concluded that employer's resistance to payment was not unreasonable because there had been no previous clear conclusion that ORS 656.262(7)(c) required reopening a claim after a nonfinal compensability determination.

Whether conduct of insurers or self-insured employers is unreasonable such that attorney fees or penalties are warranted involves both legal and factual questions. *See Brown v. Argonaut Insurance Company*, 93 Or App 588, 591, 763 P2d 408 (1988) (applying that standard to attorney fee awards under what is now ORS 656.262(11) and under ORS 656.382(1)); *Red Robin International v. Dombrosky*, 207 Or App 476, 481, 142 P3d 493 (2006) (applying that standard to penalty under ORS 656.268(5)(d)). The correct legal inquiry is whether the employer had legitimate doubt about its liability. *SAIF v. Azorr*, 182 Or App 90, 95, 47 P3d 542, *rev den*, 335 Or 90 (2002); *International Paper Co. v. Huntley*, 106 Or App 107, 110, 806 P2d 188 (1991). If the board has used the correct legal standard, then we review its finding about reasonableness for substantial evidence, considering that conclusion in light of all the evidence available to the employer. *Brown*, 93 Or App at 591; *see also, e.g., Nero v. City of Tualatin*, 142 Or App 383, 387, 920 P2d 570 (1996) (setting out similar framework for review).

The board's order recites the legal standard as

"whether, from a legal standpoint, the carrier had a legitimate doubt as to its liability. *Int'l Paper Co. v. Huntley*, 106 Or App 107[, 806 P2d 188] (1991). If so, the refusal to pay is not unreasonable."

From that statement and from the entirety of the board's order, it is clear that the board applied the correct legal standard. *Azorr*, 182 Or App at 95 (concluding that similarly phrased board order applied the correct legal standard).

---

ORS 656.268(5)(d) provides:

"If an insurer or self-insured employer has closed a claim or refused to close a claim pursuant to this section, if the correctness of that notice of closure or refusal to close is at issue in a hearing on the claim and if a finding is made at the hearing that the notice of closure or refusal to close was not reasonable, a penalty shall be assessed against the insurer or self-insured employer and paid to the worker in an amount equal to 25 percent of all compensation determined to be then due the claimant."

The remaining issue is whether there is substantial evidence, in light of all the information available to employer, to support the board's finding that employer lacked legitimate doubt about its claims processing obligations. There is no dispute about the historical facts known to employer, and so the answer turns on whether given the pertinent statutes, case law, and board orders, employer's doubt about the state of the law was legitimate. *See id.* (following similar analysis).

As noted above, the pertinent text of ORS 656.262(7)(c) is susceptible to more than one interpretation. It is plausible in light of the words used by the legislature to have doubt about whether the legislature intended to refer to only any compensability determination, regardless of finality, or to refer only final compensability determinations. 252 Or App at 495.

As to case law, the board reasoned that, in light of *Maddox* and its decisions in *Albert D. Avery,* 51 Van Natta 814 (1999), and *Robert E. Wolford,* 45 Van Natta 573 (1993), employer did not have legitimate doubt about its obligations in connection with claimant's omitted condition claims while its appeal of compensability was pending. However, as we have explained, *Maddox* has limited bearing on the issue of employers' omitted condition processing obligations under ORS 656.262(7)(c), both because *Maddox* was decided under a previous version of ORS 656.313 and because *Maddox* predates the enactment of ORS 656.262(7)(c). 252 Or App at 499. At the very least, it was not clear how ORS 656.262(7)(c) would be construed in light of *Maddox*, given that the statute was enacted over a decade later and included a provision on omitted claims processing, an issue not addressed in *Maddox* or even part of the statutory scheme when that case was decided. *Wolford* also was decided before ORS 656.262(7)(c) was adopted, and so, similarly, it was not clear whether *Wolford*'s reasoning applied in this context. *Avery* was decided after ORS 656.262(7)(c) was adopted, but does not address a case in post-closure posture and, accordingly, did not call on the board to construe the "found compensable" wording in ORS 656.262(7)(c) that the parties dispute in this case.

Moreover, and as the board majority acknowledged, another—and more recent—board decision can be read to suggest that an employer need not continue processing if it is appealing an order finding an omitted condition to be compensable. *Anthony Grebisz*, 54 Van Natta 1380, 1381 (2002) (if the employer wanted to avoid reopening and processing omitted condition, its remedy was to seek review of ALJ order finding the omitted condition to be compensable).

Finally, and perhaps even more significantly, as dissenting board member Lowell observed, no case decided by the board had previously addressed the issue of whether a carrier must reopen and process an omitted condition claim after a nonfinal compensability determination under ORS 656.262(7)(c). The board has, under similar circumstances, declined to penalize an employer's failure to meet its claims processing obligations. *See Darryl R. Harris*, 56 Van Natta 3176, 3181 (2004) (declining to award penalties and attorney fees and penalties where no case had addressed precise issue and existing cases were distinguishable); *Michael A. Ditzler*, 56 Van Natta 1819, 1823 (2004) (declining to award penalty where statutory provision at issue had not previously been construed).

The state of the law left room for legitimate doubt about whether employer was obligated under ORS 656.262(7)(c) to reopen the claim and process claimant's omitted condition claims pending a final determination of their compensability. Accordingly, the board's award of attorney fees and a penalty in this case is not supported by substantial evidence and must be reversed.[8]

In conclusion, the board correctly interpreted ORS 656.262(7)(c) to obligate employers to reopen and process omitted condition claims pending final determination of the compensability of those claims. Employer did not comply with those obligations in this case. However, the board's

---

[8] Employer also argues that the penalty for unreasonable failure to close under ORS 656.268(5)(d) was not supported by substantial reason because the statutory requirements for claim closure had not been met. Because we reverse the penalty for failure to close on the ground that board's finding that employer unreasonably failed to process and close the omitted condition claims was not supported by substantial evidence, we do not address that argument.

finding that employer lacked legitimate doubt about its obligations was not supported by substantial evidence in light of the state of the law available to employer, and so the board erred in imposing a penalty and attorney fees.

Reversed.