Argued and submitted March 15, 2019, reversed and remanded August 5, 2020

In the Matter of the Compensation of
Justin A. Swint, Claimant.

Justin A. SWINT,
*Petitioner,*

*v.*

CITY OF SPRINGFIELD,
*Respondent.*

Workers' Compensation Board
1701519; A167556

472 P3d 800

Claimant requested a hearing on whether his employer used the wrong rate to calculate his periodic temporary disability compensation, resulting in a series of underpayments that violated the employer's obligations under ORS 656.262 (4)(b). After an administrative law judge agreed with claimant that he was entitled to additional compensation, the Workers' Compensation Board reversed that decision. The board concluded that, because claimant's hearing request was made more than two years after the date of the first payment, it was time-barred under ORS 656.319(6). Claimant seeks judicial review of the board's order, arguing that the board erred in concluding that his request was time-barred under that statute. *Held*: The two-year window under ORS 656.319(6) is determined by the specific "alleged action or inaction" in processing—a standard that necessarily requires an assessment of the particular processing requirements imposed on an employer by statute and rule. In the case of challenges to computations required in the course of processing, the timeliness inquiry depends on (1) when the statutes and rules require that computations be made; and (2) what, if any, obligations are imposed to reevaluate prior computations. The board's order did not address those questions and failed to adequately explain why the first payment involved a claim-processing action that each subsequent payment did not.

Reversed and remanded.

Christopher D. Moore argued the cause and filed the briefs for petitioner.

Howard R. Nielsen argued the cause for respondent. Also on the brief was Bohy Conratt, LLP.

Before Lagesen, Presiding Judge, and DeVore, Judge, and Sercombe, Senior Judge.

LAGESEN, P. J.

Reversed and remanded.

**LAGESEN, P. J.**

In this workers' compensation case, claimant requested a hearing on whether his employer used the wrong rate to calculate his periodic temporary disability compensation, resulting in a series of underpayments that violated the employer's obligations under ORS 656.262(4)(b). After an administrative law judge (ALJ) agreed with claimant that he was entitled to additional compensation, the Workers' Compensation Board reversed that decision. The board concluded that, because claimant's hearing request was made more than two years after the date of the first payment, it was time-barred under ORS 656.319(6). Claimant seeks judicial review of the board's order, arguing that the board erred in concluding that his request was time-barred under that statute. For the reasons explained below, we conclude that the board's order lacks substantial reason to support its conclusion, and we therefore reverse and remand the order.

The facts are not in dispute, so we draw them from the summary in the board's order and the ALJ's factual findings, which the board adopted. *See McDowell v. Employment Dept.*, 348 Or 605, 608, 236 P3d 722 (2010). Claimant, a police officer for the City of Springfield, suffered a compensable injury in September 2014; he was released to light duty and subsequently returned to modified work later that month. The city accepted his claim and, on October 8, 2014, sent a "Notice of Wage Calculation" letter to claimant.[1] The notice advised claimant that his temporary total disability (TTD) rate was calculated as $830.43, based on an average weekly wage (AWW) of $1,245.59, but that the city had elected to provide "wage continuation" in lieu of paying temporary disability benefits. "Wage continuation" refers to a self-insured employer's ability to "pay[ ] to an injured worker who becomes disabled the same wage at the same pay interval that the worker received at the time of injury," which is "deemed timely payment of temporary disability payments pursuant to ORS 656.210 and 656.212 during the time the wage payments are made." ORS 656.262(4)(b). The "Notice of Wage Calculation" explained that the AWW/TTD

---

[1] Many of the actions at issue were taken through the city's claims administrator; for readability, we do not distinguish between the two.

information was being provided because any work disability award, if determined to be due at the time of closure, would be based upon that wage calculation. The notice further advised claimant that, if he disagreed with the wage calculation, he must immediately notify the city of his disagreement.

In this case, the wage continuation in lieu of temporary disability was the result of an agreement between the city and the police union, the Springfield Police Association. Pursuant to that agreement, the city paid claimant his regular base pay plus incentives (*e.g.*, contributions to his retirement account, and medical and dental insurance) in two-week intervals; he received his regular base pay for 40 hours a week even if he worked less than 40 hours, but he did not have an opportunity to work overtime.

The first wage-continuation payment was made to claimant on October 10, 2014, for the period of September 21 to October 4, 2014. Payroll information accompanying the check indicates that an hourly rate of $31.14 was used to calculate wages, which was claimant's regular hourly base pay rate. Wage-continuation payments continued to be paid every two weeks until February 28, 2017, when claimant was released to regular work without restrictions.

On April 7, 2017, claimant requested a hearing to challenge the city's processing of his temporary disability benefits. In claimant's view, the wage calculation used by the city had erroneously failed to account for his actual wages, including the overtime that he regularly worked, meaning that he had not been paid "the same wage at the same pay interval that the worker received at the time of injury" as required by ORS 656.262(4)(b).

In response, the city disagreed with claimant's position that the payments violated ORS 656.262(4)(b), arguing that claimant got a "better bargain" from the city by receiving his base pay for reduced hours rather than the hours he worked. However, the city also asserted, as a threshold matter, that claimant's request for a hearing was untimely under ORS 656.319(6). That statute provides that "[a] hearing for failure to process or an allegation that the claim was processed incorrectly shall not be granted unless the request

for hearing is filed within two years after the alleged action or inaction occurred."

The city's timeliness argument was premised on its view that the "alleged action" that triggered the two-year limitation period in ORS 656.319(6) was the notice of wage calculation. The city contended:

"Here [the city's claims administrator] sent the Claimant a notice of wage calculation on October 8, 2014 ***. It advised Claimant of the calculated average weekly wage and advised that the city provides salary continuation in lieu of time loss benefits. ***

"Claimant never challenged that notice letter, again not until April of this year. That notice letter was an affirmative action that triggered the time to Request for Hearing, but apparently Claimant was content to receive salary continuation benefits and really didn't have any problems with his average weekly wage because [the claims administrator] never heard anything from him until April of this year when he was represented by [counsel]."

Claimant, on the other hand, argued that each *payment* raised the calculation issue anew, because each payment violated the city's ongoing obligation to pay him the same wage at the same pay interval that he received at the time of injury under its election to provide wage continuation in lieu of disability payments. He argued that, "with their action or failure to act, it was renewed each and every time it acted or failed to act, so it's timely. At worst, you could say it—you're going to take it back two years from April of 2017 to April of 2015, but I think that the issue was actually raised fully each and every time and, therefore, we can go back farther."

The ALJ agreed with claimant regarding timeliness, rejecting the city's view that the notice of wage calculation was the "alleged action" for purposes of ORS 656.319(6). The ALJ reasoned that the notice advised claimant of the city's election to provide salary continuation in lieu of temporary disability, but that claimant was not challenging the election. "Rather," the ALJ explained, "claimant is challenging the [city's] failure to pay him the same wage that he received at the time of injury, which is a statutory

requirement of providing salary continuation in lieu of temporary disability." "Thus, the claim processing actions being challenged by claimant are the [city's] wage-continuation payments that were made in lieu of paying temporary disability benefits." Because claimant had filed his hearing request within two years of when those alleged underpayments ended in February 2017, the ALJ determined that claimant's request was timely. And, on the merits, the ALJ agreed that claimant had been underpaid, directed the city to pay additional benefits, and assessed attorney fees and penalties.

The city sought board review of the ALJ's decision, arguing, among other contentions, that the ALJ erred in concluding that the hearing request was timely. As it did before the ALJ, the city argued that the "October 8, 2014 letter was the action that triggered the two-year time frame for claimant to request a hearing regarding the average weekly wage and temporary disability rate calculations." Claimant defended the ALJ's ruling, again arguing that each payment involved a new alleged action—or inaction—in failing to pay the statutorily required rate.

The board ultimately rejected the claimant's view and the ALJ's conclusion that each payment involved a new "alleged action," but it also rejected the city's position that the notice of wage calculation was the relevant trigger.[2] The board instead ruled that the first payment, not the notice or subsequent payments, was the relevant "alleged action":

> "[T]he claim processing 'action' that triggered the two-year limitation period in ORS 656.319(6) occurred on October 10, 2014 (the date of the first wage-continuation payment), when the employer allegedly did not include overtime when calculating claimant's 'same wage.' That is when the employer's allegedly incorrect processing of the wage replacement began. Because that action triggered the running of the two-year time limitation, claimant's April 7, 2017, request for hearing was untimely filed and thus time-barred."

---

[2] The order states, "Although we disagree with the employer's contention that the Notice of Wage Calculation letter tolled [*sic*] the two-year limitation in ORS 656.319(6), we still conclude that claimant's hearing request was not timely filed."

The board therefore vacated the ALJ's order and dismissed claimant's request for a hearing.

Claimant seeks judicial review of that order. He argues, as he did before the ALJ and the board, that the "alleged action or inaction" in this case is the city's failure to pay the statutorily required rate—an ongoing processing obligation that was breached within the two-year limitations period. The city, as it did below, disputes that proposition. But the city now hedges, in light of the board's order, about exactly when the "alleged action or inaction" occurred: "Although claimant asserts that each salary check he received was a new separate processing action giving rise to an independent right to request a hearing, the actual action that claimant asserts was allegedly incorrect—calculation of his salary at base wage—*occurred either when he was informed by the Notice of Wage Calculation letter, or when he received his first check based on that wage rate calculation.*" (Emphasis added.)

The ambiguity in the city's response highlights the fundamental problem with the board's order: It fails to articulate the connection between the facts of the case and the result reached, leaving the city to supply an explanation. *See Walker v. Providence Health System Oregon*, 254 Or App 676, 686, 298 P3d 38, *rev den*, 353 Or 714 (2013) ("In determining whether the board's order is supported by substantial reason, we consider whether that order articulates the reasoning that leads from the facts found to the conclusions drawn." (Internal quotation marks omitted.)).

The timeliness question presented in this case is bound up, to a significant extent, in the merits of claimant's allegations. On the merits, claimant contends that ORS 656.262(4)(b) creates an ongoing or recurring obligation to pay "the same wage at the same pay interval that the worker received at the time of injury" if the employer wants to take advantage of that provision, whereas the city argues that the statute contemplates only an initial wage calculation. The closely related question under ORS 656.319(6) concerns *when* the "alleged action or inaction occurs" for that type of processing error: when the calculation is made, or when each payment is calculated incorrectly (or made without

correcting the initial calculation)? Thus, both the merits and timeliness turn on what particular processing obligations an employer has with regard to calculating wages for purposes of ORS 656.262(4)(b), and when those processing obligations must occur.[3]

Here, however, the board never addressed the question of what ORS 656.262(4)(b) specifically requires with regard to processing and, in particular, the timing and nature of an employer's wage calculation obligations under that statute. Instead, the board discussed our decision in *French-Davis v. Grand Central Bowl*, 186 Or App 280, 285, 62 P3d 865 (2003), and its own decisions applying ORS 656.319(6), before concluding that the limitation period was triggered by the first payment, not the earlier notice of calculation or subsequent payments. But nothing in the board's order, or any of the cases cited therein, logically connects the facts of this case to the board's conclusion.

In *French-Davis*, we considered what type of "inaction" amounts to a "failure to process" a claim so as to trigger the two-year limitation period in ORS 656.319(6). We explained that, as used in the statute, "inaction" refers to "what might be called (oxymoronically) affirmative inaction"—a "failure to perform a time-specific, discrete duty, request or obligation." *Id.* at 285. We explained that, if it were otherwise and the "inaction" referred to an *ongoing* failure to act, then the time period would never expire. *Id.*

In this case, the board distinguished *French-Davis* on the ground that "claimant is not alleging a failure to process the claim, but rather is alleging that the employer processed the claim incorrectly by not including consideration of overtime in his 'same wage' calculation for wage continuation purposes." It then explained, "In other words, the issue in this case is not an alleged failure to process, as was the case in *French-Davis*, but rather concerns an alleged incorrect claim processing. Thus, we are required to determine the date of the alleged 'action' (as opposed to 'inaction,' as

---

[3] Despite being bound up with the merits, timeliness under ORS 656.319(6) is jurisdictional and the board is required to address it before reaching the merits. *Hamilton v. SAIF*, 275 Or App 978, 983, 365 P3d 1116 (2015).

was the case in *French-Davis*) that triggered the two-year period under ORS 656.319(6)."[4]

The board then turned to one of its own opinions, *Terrizino D. Williams*, 58 Van Natta 1487, 1489 (2006), which it described as "instructive." In *Williams*, the claimant had "alleg[ed] that the employer processed the claim incorrectly by not including supplemental temporary disability in his initial temporary disability payment." *Id.* at 1490. The board in that case determined that it involved "action" rather than "inaction" as in *French-Davis*, and that the triggering "'action' occurred on February 12, 2003, when the employer allegedly did not correctly include supplemental temporary disability in claimant's temporary disability payment." *Id.*

In its order in this case, the board relied on the implication from *Williams* that each payment was not a new processing "action":

> "Of note, temporary disability benefit payments in *Williams* from February 23, 2003 through July 2, 2003, if considered individually, would have been within two years of the request for hearing. However, our decision did not address each payment, but, as mentioned, focused on the commencement of the incorrect processing as the 'action' triggering ORS 656.319(6).
>
> "Applying the *Williams* rationale to the present case, we do not evaluate each individual wage-continuation payment separately as an 'action' under ORS 656.319(6). Rather, we conclude that the claim processing 'action' that triggered the two-year limitation in ORS 656.319(6) occurred on October 10, 2014 (the date of the first wage-continuation payment), when the employer allegedly did not include overtime when calculating claimant's 'same wage.' That is when the employer's allegedly incorrect processing of the wage replacement began. Because that action triggered

---

[4] The board's characterization of claimant's argument was incomplete. Claimant contended that each check represented an incorrect processing "action" in that the check, in claimant's view, was based on an incorrectly computed wage rate, but claimant also argued that, with each check, the city failed to act to correct its alleged previous error. If claimant is correct in either respect—that is, if (1) with each check, the city had a discrete obligation to correctly compute claimant's wage rate but did so incorrectly; or (2) with each check, the city had a discrete processing obligation to review and correct any past errors in the wage rate, but did not take that action—then his hearing request would be timely as to those checks issued no more than two years before his hearing request.

the running of the two-year time limitation, claimant's April 7, 2017, request for hearing was untimely filed and thus time-barred."

(Footnotes omitted.)

Although the board's order refers to the *Williams* "rationale," *Williams* itself supplies little explanation as to why the first payment in that case involved "processing" but later payments did not. The two-year window under ORS 656.319(6) is determined by the specific "alleged action or inaction" in processing—a standard that necessarily requires an assessment of the particular processing requirements imposed on an employer by statute and rule. In the case of challenges to computations required in the course of processing, the timeliness inquiry depends on (1) when the statutes and rules require that computations be made; and (2) what, if any, obligations are imposed to reevaluate prior computations. *Williams* did not address those questions. Although it does not appear that the claimant in *Williams* sought judicial review to test whether the order in that case was supported by substantial reason, that does not insulate the board's later opinions from scrutiny for substantial reason. In other words, an agency's reliance on its own precedent cannot supply the required substantial reason—the logical explanation as to how the conclusion follows from the facts found—when that precedent itself lacks the requisite substantial reason connecting the facts found to the legal conclusions reached.

The reasoning in the remaining cases cited by the board is equally sparse on that point, providing only bare conclusions. *See Randall E. Kelley*, 54 Van Natta 1645, 1646 (2002) (concluding, without analysis, that "[w]e decline to find that each individual temporary disability payment constitutes an 'action or inaction' under the statute"); *see also Howard E. Benjamin*, 65 Van Natta 215 (2013) (relying on *Williams* and concluding, in a case where no payments occurred in the two years before the claimant's 2011 hearing request, that the request was untimely filed with regard to the insurer's claim processing actions in 2006 and 2007); *Jesse G. Ayala, Jr.*, 66 Van Natta 1845, 1850 (2014) (referring to *Williams* and stating that, "whether claimant's

challenge is interpreted as contesting the employer's 'action' of calculating his TTD benefits as TPD benefits starting August 2010, or its 'action' of awarding such benefits in the February 8, 2011 closure notice (which the employer was obligated to pay effective February 22, 2011)," the April 2013 hearing request was untimely).

In fact, the only case cited in the board's order that analyzed the question of "action or inaction" in terms of specific statutory or rule requirements reached the opposite conclusion as to whether separate payments involved discrete processing obligations. *See Armando Morin*, 68 Van Natta 1760, 1764 (2016) (explaining that "OAR 436-060-0150 (5)(h) and (6) establish specific time frames for the payment of temporary disability benefits generally, and following an ALJ's order. Those time-specific obligations fell on multiple dates. Therefore, we evaluate each obligation separately in determining which of the multiple issues raised by claimant's hearing request are timely and may be addressed."). Here, the board did not engage with the reasoning in that case—which appears to have approached the question correctly, determining first what processing obligations the employer had and the timing of those obligations. Instead, the board distinguished *Morin* solely on the ground that it "involved a failure to process, as opposed to incorrect claim processing"—a conclusion that fails to account for the fact that claimant also alleged that the city had a discrete processing obligation to review and correct any past errors in the wage rate, but did not take that action. *See* 305 Or App at 686 n 4.

On the facts of this case, the lack of reasoning with regard to when the calculation of a wage is, or is not, an action that is part of the processing of a payment made pursuant to ORS 656.262(4)(b) is especially pronounced, because the city provided a notice of calculation before the first payment, relied on that as a claim-processing action that required a response from claimant if he disagreed, and had never argued that the initial payment following the notice of calculation constituted the claim-processing action. Beyond that, on the face of it, the record in this case supplies no basis to conclude that the city's first check to the claimant involved a processing action or inaction that each

subsequent check did not also involve. The board's order fails to adequately explain why the first payment nonetheless involved a claim-processing action related to the city's obligation under ORS 656.262(4)(b) but each subsequent payment did not. We therefore reverse and remand the order for reconsideration.

Reversed and remanded.