Submitted July 22, affirmed on petition; on cross-petition, remanded for
redetermination of penalty under ORS 656.268(5)(d) based on all compensation
due as of the May 25, 2011, premature closure; otherwise affirmed
Novmber 19, 2014

In the Matter of the Compensation of
Jose L. Olvera-Chavez, Claimant.

LIBERTY NORTHWEST INSURANCE CORP.;
and Hallmark Inns & Resorts, Inc.,
*Petitioners*
*Cross-Respondents,*

*v.*

Jose L. OLVERA-CHAVEZ,
*Respondent*
*Cross-Petitioner.*

Workers' Compensation Board
1103936; A152550

339 P3d 928

David O. Wilson filed the brief for petitioners-cross-
respondents.

Ronald A. Fontana and Ronald A. Fontana, P.C., filed the brief for respondent-cross-petitioner.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

## TOOKEY, J.

In this workers' compensation case, insurer Liberty Northwest Insurance Corp. (Liberty), and employer Hallmark Inns and Resorts seek review of an order of the Workers' Compensation Board (board) upholding a determination by an administrative law judge (ALJ) that Liberty prematurely closed claimant's low back claim after claimant finished an authorized training program (ATP), and that claimant is entitled to additional benefits for temporary disability, a penalty under ORS 656.268(5)(d), and attorney fees. On judicial review, Liberty asserts that the board erred in setting aside its notice of closure and also erred in assessing a penalty and related attorney fees. In a cross-petition, claimant seeks additional penalties and attorney fees. We affirm on the petition, and on the cross-petition we remand for a redetermination of penalty under ORS 656.268(5)(d) based on all compensation due as of the May 25, 2011, premature closure, and otherwise affirm.

We first describe the relevant statutory provisions and administrative rules relating to claim closure, because they provide necessary context for an understanding of the petition and cross-petition. As applicable here, ORS 656.268(1)(a) to (d)[1] set forth the procedures generally for claim closure. ORS 656.268(1) provides that, when a claimant is not enrolled and actively engaged in training, "[t]he insurer or self-insured employer shall close the worker's claim, as prescribed by the Director of the Department of Consumer and Business Services," when the claimant "has become medically stationary and there is sufficient information to determine disability." *See also* OAR 436-030-0020(1)(a) (providing for claim closure when "[m]edical information establishes there is sufficient information to determine the extent of permanent disability under ORS 656.245(2)(b)(C), and indicates the worker's compensable condition is medically stationary").[2] Thus, the general provisions relating to

---

[1] ORS 656.268 was amended in 2011. Or Laws 2011, ch 99, § 1. The only change pertinent here was a renumbering of ORS 656.268(9) to ORS 656.268(10). For simplicity, throughout this opinion, we refer to the current version of the statute.

[2] Under OAR 436-030-0020(2), "sufficient information" to determine the extent of permanent disability consists either of a written statement provided by

claim closure require that a claim be closed when the worker is medically stationary[3] and there is sufficient information to determine disability.

ORS 656.268(10)[4] describes the procedures that apply when a claim is reopened so that the worker can attend an ATP. During training, the worker continues to receive that portion of the permanent disability award relating to impairment, and also begins to receive temporary disability compensation; however, any benefits the worker is receiving for "work disability" are suspended.[5] ORS 656.268(10). When the worker ceases to be enrolled and actively engaged

---

an authorized medical professional showing that there is no permanent impairment, OAR 436-030-0020(2)(a), or a closing medical examination and report describing the measurements and findings regarding any permanent impairment. OAR 436-030-0020(2)(b). When the worker has not yet been released for regular work, the closing medical examination report must also include information about the worker's wages, date of birth, work history and level of formal education, and the physical requirements of the worker's job at the time of injury. *Id.*

[3] A worker is "medically stationary" when "no further material improvement would reasonably be expected from medical treatment, or the passage of time." ORS 656.005(17).

[4] ORS 656.268(10) provides:

"If, after the notice of closure issued pursuant to this section, the worker becomes enrolled and actively engaged in training according to rules adopted pursuant to ORS 656.340 and 656.726, any permanent disability payments due for work disability under the closure shall be suspended, and the worker shall receive temporary disability compensation and any permanent disability payments due for impairment while the worker is enrolled and actively engaged in the training. When the worker ceases to be enrolled and actively engaged in the training, the insurer or self-insured employer shall again close the claim pursuant to this section if the worker is medically stationary or if the worker's accepted injury is no longer the major contributing cause of the worker's combined or consequential condition or conditions pursuant to ORS 656.005(7). The closure shall include the duration of temporary total or temporary partial disability compensation. Permanent disability compensation shall be redetermined for work disability only. If the worker has returned to work or the worker's attending physician has released the worker to return to regular or modified employment, the insurer or self-insured employer shall again close the claim. This notice of closure may be appealed only in the same manner as are other notices of closure under this section."

[5] "Work disability" is defined as impairment, modified by "age, education, and adaptability to perform a given job." ORS 656.214(1)(e); *see also* OAR 436-035-0005(20) ("'Work disability,' for the purposes of determining permanent disability, means the separate factoring of impairment as modified by age, education, and adaptability to perform the job at which the worker was injured."). Pursuant to OAR 436-035-0012, the adaptability factor of "work disability" requires a determination of the worker's remaining ability to perform work-related activities despite impairment, through a comparison of the impaired worker's functional

in training, "the insurer or self-insured employer shall again close the claim * * * if the worker is medically stationary[.]" *Id.* The notice of closure is required to include "the duration of temporary total or temporary partial disability compensation." *Id.* ORS 656.268(10) further provides that, after ATP terminates, "[p]ermanent disability compensation shall be redetermined for work disability only." *See also* OAR 436-030-0020(13) (providing that, when ATP has ended and the worker is medically stationary, the insurer must issue a new notice of closure and must redetermine the worker's "work disability").

We turn to the facts of this case as they pertain to the premature closure issue. Claimant suffered an on-the-job disabling injury to his back in 2007. After treatment and time loss, claimant's attending physician determined that claimant's condition had become medically stationary as of September 11, 2009. Liberty closed the claim on December 1, 2009, with an award of 18 percent "whole person impairment," and 33 percent "work disability."

Liberty reopened the claim as of April 5, 2010, so that claimant could participate in an ATP. The training terminated on December 17, 2010, due to concerns about suitability. Liberty did not reclose the claim at that time. Beginning April 27, 2011, claimant participated in an occupational skills ATP. That program terminated prematurely on May 16, 2011, for lack of employer participation.

Liberty reclosed the claim on May 25, 2011. The notice of closure stated that claimant had become medically stationary on September 11, 2009, and awarded claimant temporary disability for the two periods during which claimant had participated in ATP: from April 5, 2010 through December 17, 2010, and from April 27, 2011 through May 16, 2011.

Claimant requested reconsideration of the notice of closure. In an order on reconsideration, the Appellate Review Unit (ARU) of the Workers' Compensation Division of the Department of Consumer and Business Services

capacity before the injury (Base Functional Capacity) and functional capacity after treatment and rehabilitation (Residual Functional Capacity).

upheld the notice of closure, explaining, "[T]he worker was medically stationary on September 11, 2009. There has been no accepted aggravation in the current open period."

Claimant requested a hearing. The ALJ determined that the claim had been closed prematurely, reasoning that Liberty had failed to obtain (1) a determination by the claimant's attending physician that claimant is medically stationary; and (2) sufficient information to determine the extent of claimant's permanent disability at the time of closure.

On appeal to the board, Liberty conceded that, pursuant to OAR 436-060-0040(4), it owed claimant benefits for temporary disability for the period of May 17, 2011 to May 25, 2011, between the end of claimant's second ATP and the notice of closure. Liberty also conceded that it owed claimant a penalty on benefits owing for that time, as well as attorney fees. It contended, however, that inasmuch as claimant had previously been determined to be medically stationary as of September 11, 2009, and the claim had been reopened only for ATP, in the absence of an aggravation, there was no need for a redetermination of claimant's medically stationary status or a new closing examination, and the claim qualified for closure immediately upon termination of ATP.

The board affirmed the ALJ's determination that the claim was prematurely closed on May 25, 2011. Like the ALJ, the board concluded that the general requirements for claim closure set out in ORS 656.268(1) and OAR 436-030-0020 are applicable in the context of a reclosure of a claim after ATP. Although, as the board acknowledged, a worker whose claim has been reopened for ATP and who has not experienced an aggravation is entitled to a redetermination of "work disability" only, the board concluded that that determination requires consideration of the worker's abilities in light of his impairment and therefore necessitates a closing medical examination. The board affirmed the ALJ's determination that the claim had been closed prematurely and found that Liberty owed claimant additional temporary disability benefits for two distinct periods: (1) from the time Liberty ceased paying temporary disability benefits on December 18, 2010 through April 26, 2011, when claimant

began the second ATP; and (2) from May 17, 2011, when Liberty stopped paying benefits, to the date the hearing record closed.

On judicial review, Liberty once again contends that, when, as here, a claimant has previously been determined to be medically stationary and there has been no intervening aggravation claim, there is no requirement in the statutes or administrative rules for a redetermination of the worker's medically stationary status prior to claim closure after ATP. Liberty further disputes the board's conclusion that, even when there has been no aggravation claim, a redetermination of "work disability" after ATP necessitates a closing examination. In Liberty's view, the ARU's order on reconsideration upholding claim closure reflects the director's interpretation of the department's own administrative rules and implicitly recognizes that, when, as here, there has been no intervening aggravation claim, there is no need for a redetermination of the worker's medically stationary status or a new closing examination to determine the extent of disability. Liberty asserts that the department's plausible interpretation of its own administrative rules is entitled to deference. *See Don't Waste Oregon Com. v. Energy Facility Siting,* 320 Or 132, 142, 881 P2d 119 (1994) (stating that, where "the agency's plausible interpretation of its own rule cannot be shown either to be inconsistent with the wording of the rule itself, or with the rule's context, or with any other source of law, there is no basis on which this court can assert that the rule has been interpreted 'erroneously' "); *Coats-Sellers v. ODOT,* 209 Or App 281, 287, 147 P3d 946 (2006) (citing *Don't Waste Oregon Com.,* 320 Or at 142, and stating that, "[w]hen an administrative agency interprets its own administrative rules, we defer to the agency's interpretation if it is plausible and is not inconsistent with the wording of the rule, its context, or any other source of law").

We readily conclude, as did the board, that upon claim closure after ATP, ORS 656.268(1) and ORS 656.268(10) together require both a redetermination of the worker's medically stationary status and a closing medical examination for the purpose of redetermining work disability. As the board correctly reasoned, ORS 656.268 sets forth

the requirements for claim closure generally as well as for claim closure after ATP. Under ORS 656.268(1), closure of a claim is permitted when the worker is medically stationary and there is sufficient information to determine permanent disability. There is no indication in ORS 656.268 that those two requirements do not also apply when a claim is closed after ATP. Although, under ORS 656.268(10), the redetermination of permanent disability after ATP is limited to work disability, we agree with the board that, as required by ORS 656.268(1), in order to close the claim after ATP, the insurer must have "sufficient information" to determine work disability, and that an evaluation of the adaptability component of work disability necessitates a closing examination.

Additionally, ORS 656.268(10) requires claim closure after ATP "if the worker is medically stationary." We agree with the board that that requirement implicitly necessitates a medical determination that the worker is or continues to be medically stationary at the time of closure after ATP. In order to close the claim, it is not sufficient that the worker has previously been determined to be medically stationary and that there has been no aggravation claim during the open period. Here, because there was no post-ATP medical opinion concerning claimant's medically stationary status or his work disability, we affirm the board's order that the May 25, 2011, notice of closure was premature.[6]

The remaining issues on the petition and cross-petition concern penalties and attorney fees. ORS 656.268(5)(d) provides:

> "If an insurer or self-insured employer has closed a claim or refused to close a claim pursuant to this section, if the correctness of that notice of closure or refusal to close is at issue in a hearing on the claim and if a finding is made at the hearing that the notice of closure or refusal to close

---

[6] Liberty contends that the ARU, in its order on reconsideration, made a plausible interpretation of the department's own administrative rule, OAR 436-030-0020(13)(c), requires the conclusion (to which this court must defer) that a closing examination is not required if the person was injured after January 1, 2005, and there has been no aggravation. We reject the contention. To the extent that the ARU's interpretation of OAR 436-030-0020(13)(c) conflicts with our conclusion that a closing examination is required under ORS 656.268, the director's interpretation is neither plausible nor entitled to deference.

was not reasonable, a penalty shall be assessed against the insurer or self-insured employer and paid to the worker in an amount equal to 25 percent of all compensation determined to be then due the claimant."

Having determined that Liberty closed the claim prematurely, the ALJ also determined that Liberty's closure of the claim was unreasonable. The ALJ found:

"[Liberty's] claim closure was unreasonable on at least three grounds, including failing to obtain medical information regarding claimant's medically stationary status, failure to obtain sufficient information to determine the extent of his permanent disability, and failure to continue to pay post ATP temporary disability benefits through the May 25, 2011 Notice of Closure. Therefore, claimant is entitled to a penalty equal to 25 percent of all compensation determined to be then due the claimant."

The board affirmed the ALJ's determination that Liberty had unreasonably closed the claim on May 25, 2011, and assessed a penalty based on 25 percent of the amounts "then due." ORS 656.268(5)(d).

As we have previously noted, when, after a notice of closure, a worker becomes enrolled in ATP, any permanent disability payments for "work disability" are suspended. When the worker ceases to be enrolled in ATP,

"[t]he insurer must stop temporary disability compensation payments and resume any award payments suspended under ORS 656.268(10) upon the worker's completion or ending of the training, unless the worker is not then medically stationary. *If no award payment remains due, temporary disability compensation payments must continue pending a subsequent claim closure.*"

OAR 436-060-0040(4) (emphasis added). It is undisputed that, when claimant's two periods of ATP ended, no award payments were due to claimant. Therefore, as the board correctly concluded, under OAR 436-060-0040(4), claimant was entitled to continue to receive temporary disability benefits from the time he completed his first ATP until claim closure. *See Atchley v. GTE Metal Erectors*, 149 Or App 581, 586, 945 P2d 557, *rev den*, 326 Or 133 (1997) (interpreting a former version of OAR 436-060-0040(4) to require continuation of

temporary disability benefits "during the period between completion of a training program and issuance of a redetermination order if the worker is medically stationary, is not entitled to additional permanent disability awards and is not working").

Liberty does not dispute that conclusion, but continues to challenge the board's determination that Liberty's notice of closure was unreasonable. As we recently said in *Providence Health System v. Walker*, 252 Or App 489, 505, 289 P3d 256 (2012) (*Walker II*), whether an insurer's conduct "is unreasonable such that attorney fees or penalties are warranted involves both legal and factual questions." *See also Red Robin International v. Dombrosky*, 207 Or App 476, 481, 142 P3d 493 (2006) (applying standard to penalty under ORS 656.268(5)(d)). An insurer's conduct is not unreasonable if the insurer had a legitimate doubt about its liability. *SAIF v. Azorr*, 182 Or App 90, 95, 47 P3d 542, *rev den*, 335 Or 90 (2002) (noting legal standard of "legitimate doubt" about liability set forth in *International Paper Co. v. Huntley*, 106 Or App 107, 110, 806 P2d 188 (1991) ("An employer's refusal to pay is not unreasonable if it has a legitimate doubt about its liability."). If the board has applied the correct legal standard, then we review its finding about reasonableness for substantial evidence, considering that conclusion in the light of all the evidence available to the employer. *Walker II*, 252 Or App at 505. Contrary to Liberty's contention, the requirement that temporary disability benefits continue after claimant's first ATP and until claim closure is not reasonably disputable under the facts of this case. *See Atchley*, 149 Or App at 586. We conclude that the record supports the board's determination that Liberty unreasonably failed to award claimant the full amount of the temporary benefits to which he was entitled through the period of claim closure and affirm the assessment of the penalty under ORS 656.268(5)(d).

We move on to consideration of claimant's cross-petition, in which he contends that the board erred in calculating the amount of the penalty and in failing to award him additional attorney fees for prevailing on the award of a penalty. As noted, the penalty assessed under ORS 656.268(5)(d) is based on compensation "determined to be

then due the claimant." In determining the amount of the penalty due claimant as a result of Liberty's failure to pay claimant the amount of temporary disability to which he was entitled at the time of claim closure, the board concluded that the amount "determined to be then due" under ORS 656.268(5)(d) was the amount of temporary disability benefits due claimant as of the date the hearing record closed. Citing our recent opinion in *Walker v. Providence Health System Oregon*, 254 Or App 676, 298 P3d 38 (2013) (*Walker III*), claimant contends in his cross-petition that the penalty should be based on the amount of compensation due at the time of Liberty's premature May 25, 2011, notice of closure. In light of *Walker III*, we agree. In that case, we said that the "relevant point in time" for determining the amount "then due" is "the time at which that unreasonable notice of closure or refusal to close was issued." *Id.* at 684. Accordingly, we conclude that the penalty should be based on the amount of compensation due claimant as of the date of the premature notice of closure.

Claimant further contends that the amount on which the penalty is to be based is the total amount of compensation—permanent disability, work disability, and temporary disability—to which claimant was entitled for the period April 5, 2010 through May 25, 2011, less the amount that had been paid as of the date of the premature notice of closure. Claimant is correct that the penalty under ORS 656.268(5)(d) is to be based on "all compensation determined to be then due" claimant. On remand, the board should determine the amount of compensation due claimant as of the date of the premature closure.

The remaining issue relates to the award of attorney fees. ORS 656.382 provides, as relevant:

> "(1) If an insurer or self-insured employer refuses to pay compensation due under an order of an Administrative Law Judge, board or court, or otherwise unreasonably resists the payment of compensation, except as provided in ORS 656.385, the employer or insurer shall pay to the attorney of the claimant a reasonable attorney fee as provided in subsection (2) of this section. To the extent an employer has caused the insurer to be charged such fees, such employer may be charged with those fees.

"(2) If a request for hearing, request for review, appeal or cross-appeal to the Court of Appeals or petition for review to the Supreme Court is initiated by an employer or insurer, and the Administrative Law Judge, board or court finds that the compensation awarded to a claimant should not be disallowed or reduced, or, through the assistance of an attorney, that an order rescinding a notice of closure should not be reversed or the compensation awarded by a reconsideration order issued under ORS 656.268 should not be reduced or disallowed, the employer or insurer shall be required to pay to the attorney of the claimant a reasonable attorney fee in an amount set by the Administrative Law Judge, board or the court for legal representation by an attorney for the claimant at and prior to the hearing, review on appeal or cross-appeal."

The board awarded claimant an assessed attorney fee for services on review regarding the premature closure and temporary disability issues, pursuant to ORS 656.382. However, the board declined to award claimant an additional assessed attorney fee for services on review relating to the securing of a penalty and attorney fees. Claimant's second contention in his cross-petition is that the board erred in not awarding a separate fee under ORS 656.382(1) for services before the board in establishing claimant's entitlement to a penalty and attorney fees. We reject the contention. As we recently reiterated in *Cayton v. Safelite Glass Corp.*, 258 Or App 522, 525, 310 P3d 718 (2013), penalties are not "compensation," and attorney fees are not awarded for prevailing on an issue of penalties. Further, we have held that the term "compensation" as used in ORS 656.382(2) does not include attorney fees. *Dotson v. Bohemia, Inc.*, 80 Or App 233, 236, 720 P2d 1345, *rev den*, 302 Or 35 (1986). We conclude that the board correctly concluded that claimant's success in obtaining a penalty and attorney fees under ORS 656.268(5)(d) for Liberty's unreasonable claim closure does not result in an award of attorney fees under ORS 656.382(1).

Contrary to claimant's contention, the Supreme Court's recent opinion in *SAIF v. DeLeon*, 352 Or 130, 282 P3d 800 (2012), does not mandate a different outcome or pertain to the issue on review here. In *DeLeon*, the court held that, when an insurer initiates a review of an award of compensation, and the final tribunal to consider the issue

determines that the award should be upheld, the claimant is entitled to attorney fees under ORS 656.382(2) (2007) for services at and prior to the final tribunal, irrespective of whether the insurer initiated the appeal or review on which the claimant ultimately prevailed. *Id.* at 143. In other words, if the claimant ultimately prevails on an insurer's or employer's request for a reduction or disallowance of benefits, the claimant is entitled to attorney fees—an entitlement to attorney fees under ORS 656.382(2) is not also contingent on the insurer having initiated the intervening or final appeal or request for review. *DeLeon* does not relate to or bear on the issue in this case—claimant's entitlement to attorney fees for having prevailed on issues relating to penalties and attorney fees.

Affirmed on petition; on cross-petition, remanded for redetermination of penalty under ORS 656.268(5)(d) based on all compensation due as of the May 25, 2011, premature closure; otherwise affirmed.