Argued and submitted June 24, 2021, affirmed June 15, 2022

In the Matter of the Compensation of
Melonie Cramer, Claimant.
PRECISION CASTPARTS CORP -
PCC STRUCTURALS,
*Petitioner,*

*v.*

Melonie CRAMER,
*Respondent.*

Workers' Compensation Board
1806152, 1806099,
1805542, 1805499, 1805435;
A173643

514 P3d 514

Employer Precision Castparts Corp - PCC Structurals seeks judicial review of an order of the Workers' Compensation Board, contending that the board erred in assessing a penalty under ORS 656.268(5), based on employer's unreasonable closure of claimant's claim. *Held*: The Board did not err in determining that claimant's claim was closed prematurely because employer lacked sufficient information on which to close claimant's claim. The board also did not err in assessing a penalty based on the premature closure, because employer unreasonably closed the claim based on the opinion of a physician who employer reasonably should have known was not claimant's attending physician.

Affirmed.

Rebecca A. Watkins argued the cause for petitioner. Also on the opening brief was Sather Byerly & Holloway LLP. Also on the reply brief was SBH Legal.

Julene M. Quinn argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

SHORR, J.

Affirmed.

**SHORR, J.**

Employer Precision Castparts Corp - PCC Structurals seeks judicial review of an order of the Workers' Compensation Board, contending that the board erred in assessing a penalty under ORS 656.268(5)(f),[1] based on employer's unreasonable closure of claimant's claim. We conclude that the board did not err in assessing the penalty and therefore affirm.

We draw our summary of the facts from the board's order and from the record. Claimant suffered a compensable shoulder injury in October 2017. Among a list of possible medical providers, claimant chose to enroll in Kaiser Permanente's "Kaiser-On-The-Job" managed care organization (MCO) for treatment of her injury. In November 2017, Dr. Anderson, an occupational medicine specialist with Kaiser Permanente, began treating claimant, and she completed a form designating him as her attending physician. Claimant saw Anderson several times. Anderson ordered imaging, referred claimant for physical therapy, and outlined work restrictions. Employer initially denied the claim but ultimately accepted it in April 2018.

Claimant disliked Anderson and decided that she did not want him to be her attending physician. Instead, while the claim was in denied status, claimant returned to her primary care physician, Dr. Constien, who treated claimant over a six-month period, from December 2017 through June 2018. Constien recommended that claimant receive additional physical therapy but could not authorize it, because the MCO required that authorization for physical therapy be provided by a doctor in Kaiser Permanente's

---

[1] The statute, formerly numbered ORS 656.268(5)(d), was renumbered in 2015 to ORS 656.268(5)(f) but is substantively unchanged. Or Laws 2015, ch 144, § 1. Throughout this opinion, we cite the current version, which provides:

"If an insurer or self-insured employer has closed a claim or refused to close a claim pursuant to this section, if the correctness of that notice of closure or refusal to close is at issue in a hearing on the claim and if a finding is made at the hearing that the notice of closure or refusal to close was not reasonable, a penalty shall be assessed against the insurer or self-insured employer and paid to the worker in an amount equal to 25 percent of all compensation determined to be then due the claimant."

occupational medicine department.[2] Thus, against her wishes and feeling that she had been manipulated into returning to Anderson, claimant returned to Anderson for a *single* visit on July 27, 2018, so that he could refer her to physical therapy. As of that visit, Anderson was aware that claimant had been treated for her injury by her primary care physician, Constien, for the prior six months.

Anderson referred claimant for additional physical therapy and a physiatry consultation. Claimant followed through with those referrals. On August 17, 2018, Anderson concurred in a letter from employer's counsel summarizing an August 8, 2018, telephone conversation in which Anderson opined that claimant's shoulder strain was medically stationary without permanent disability or work restrictions. On August 27, 2018, claimant's counsel informed employer's processing agent that she did not want to treat with Anderson because of her experience with him and "did not consider Dr. Anderson to be her attending physician and it was not her intention that he become her attending physician when she saw him on July 27, 2018."

Claimant continued to seek a new attending physician and asked to disenroll from the MCO so she could seek treatment elsewhere and not with Anderson. When the MCO declined, she requested resolution of the issue with the MCO's medical dispute resolution director.[3] Although aware of claimant's dispute and her request to change attending physicians, based on Anderson's opinion that claimant was medically stationary without any permanent impairment, employer closed the claim on September 10, 2018, without an award of permanent disability.

Having set forth the significant facts, we now set forth some of the applicable law that gives context to those

---

[2] During the period when the claim was denied, claimant was not restricted to seeing physicians who were approved by the MCO; thus, she could see Constien during that time. *Orowheat-Bimbo Bakeries v. Vargas*, 287 Or App 331, 335, 337, 401 P3d 1256 (2017) (requirement that the worker see only MCO-approved physicians applies only to accepted claims); ORS 656.245(4)(b)(D) ("If the claim is denied, the worker may receive medical services after the date of denial from sources other than the managed care organization until the denial is reversed.").

[3] The MCO ultimately facilitated claimant's examination by a different occupational medicine specialist, Dr. Kerfoot, who became claimant's attending physician.

facts. ORS 656.245(2)(a) provides that "[t]he worker may choose the initial attending physician or nurse practitioner and may subsequently change attending physician or nurse practitioner two times without approval from the director." A claim may be closed when the worker is medically stationary and the insurer has "sufficient information" to determine the worker's disability, if any. ORS 656.268(1)(a) (providing that a claim may be closed when "[t]he worker has become medically stationary and there is sufficient information to determine permanent disability"). Only the attending physician (or a physician to whom the attending physician has referred the worker) may provide "sufficient information" to close a claim, because only the attending physician may address impairment and release the worker to regular or modified work at closure. ORS 656.245(2)(b)(C).[4] An "attending physician" is "a doctor who is primarily responsible for the treatment of a worker's compensable injury" and who, among other things, meets certain licensing requirements. ORS 656.005(12)(b).[5] *See also* OAR 436-010-0210(1) (stating that an attending physician is "primarily responsible for the patient's care, authorizes temporary disability, and prescribes and monitors ancillary care and specialized care").

        Claimant requested that the Appellate Review Unit (ARU) reconsider employer's closure of her claim, contending, among other issues, that she did not have an attending

---

[4] ORS 656.245(2)(b)(C) provides:

   "Except as otherwise provided in this chapter, only a physician qualified to serve as an attending physician under ORS 656.005(12)(b)(A) or (B)(i) who is serving as the attending physician at the time of claim closure may make findings regarding the worker's impairment for the purpose of evaluating the worker's disability."

*See also* OAR 436-030-0035(1)(a) ("In an initial injury claim, a worker is medically stationary when the attending physician, authorized nurse practitioner, or a preponderance of medical opinion declares that all accepted conditions and direct medical sequelae of accepted conditions are either 'medically stationary' or 'medically stable' or when the provider uses other language meaning the same thing."); OAR 436-030-0035(5) ("The insurer may request that the attending physician or authorized nurse practitioner concur with or comment on the closing examination when the attending physician or authorized nurse practitioner arranges or refers the worker for a closing examination with another physician.").

[5] The statute provides that the definition applies "except as otherwise provided for workers subject to a managed care contract." ORS 656.005(12)(b). Both parties focus on the definition in the statute and neither argues that an exception applies here. We therefore do not address that exception.

physician at the time of claim closure and that the notice of closure was therefore premature and unreasonable, because it was not based on sufficient information provided by an attending physician, as required by ORS 656.245(2)(b)(C).

The ARU initially determined that Constien, not Anderson, was claimant's attending physician. But the ARU ultimately determined that claimant did not have an attending physician at the time of claim closure. Thus, the ARU set aside the notice of closure based on a lack of "sufficient information."

Employer requested a hearing, seeking to reinstate the notice of closure. Among other arguments, employer contended that the ARU had erred in determining that Anderson was not claimant's attending physician, as defined in ORS 656.005(12)(b), who could provide sufficient information for closure of the claim. Employer asserted that Anderson had been primarily responsible for treatment of claimant's injury and therefore constituted an "attending physician" as defined in ORS 656.005(12).

An administrative law judge (ALJ) upheld the ARU's determination that claimant did not have an attending physician at the time of claim closure, as well as its order setting aside the notice of closure. The ALJ based that conclusion on evidence that, although claimant had seen Anderson three times, she had primarily seen her primary care physician and considered him to be her attending physician and had returned to Anderson only when Constien was unable to authorize physical therapy. The ALJ found, based on that evidence, that claimant had changed her "treating" physician to her primary care physician.[6] The ALJ further assessed a penalty under ORS 656.268, finding that employer had unreasonably closed the claim, because, in the absence of an attending physician, there was insufficient information for claim closure.

The board affirmed the ALJ's order and adopted its findings, along with the assessment of a penalty. In affirming the ALJ's findings, the board found:

---

[6] Although the ALJ used the term "treating physician," it is clear that in this context, the ALJ considered it to be synonymous with "attending physician."

"Based primarily on claimant's actions and words, the evidence established that she did not have a treating physician for her right shoulder strain claim at the time of closure. The employer's position that claimant's actions and words regarding her treating physician were irrelevant was not persuasive. Claimant's refusal to treat with Dr. Anderson after July 27, 2018, her consistent statements that Dr. Anderson was not her treating physician and she would not return to him, along with her persistent efforts to find a new physician were all relevant facts in determining that she did not have an attending physician at the time of closure. Therefore, the ARU correctly concluded that the employer improperly relied on the findings and conclusions of Dr. Anderson, the ARU properly rescinded the Notice of Closure, and the Order on Reconsideration will be approved."

As explained further below, the board also upheld the assessment of a penalty.

On judicial review, employer challenges the assessment of a penalty based on the determination that the claim had been unreasonably closed. That argument depends at least in part on employer's contention, in its first and second assignments, that the board erred in determining that Anderson was not claimant's attending physician. Employer asserts that, whether or not claimant wanted him to be her attending physician, Anderson was claimant's attending physician at the time of claim closure based on the services he provided, as the term "attending physician" is defined in ORS 656.005(12).

In response, claimant relies on her statutory right to change attending physicians and contends that the evidence of her decision to treat with Constien and her expressed desire to have an attending physician other than Anderson supports the board's finding that she did not have an attending physician at the time of claim closure. Employer responds that whether or not claimant desired to have a different attending physician, the evidence supports a determination that services that Anderson actually provided show that he was the attending physician at the time of claim closure.

It is clear from the board's order that the board understood the statutory definition of an attending physician as set forth in ORS 656.005(12)(a). In employer's view, the board did not apply that definition correctly, because it placed too much weight on claimant's belief that Anderson was not her attending physician.

The board has held, and we agree, that whether a medical service provider is an attending physician under ORS 656.005(12)(a) is a question of fact. We agree with the board that, contrary to employer's contention, in addition to the treatment that was actually provided, claimant's choice of an attending physician was relevant to whether Anderson was "primarily responsible" for her treatment. Claimant could and did decide that she did not want Anderson to be responsible for her treatment, which she communicated by her decision to seek treatment from Constien and through her counsel's correspondence with the MCO. *See* ORS 656.245(2)(a) ("*The worker* may choose an attending doctor." (Emphasis added.)).

But even if we were to conclude, as employer contends, that claimant's wishes had no bearing on the determination of who was her attending physician (or that claimant's counsel's representations concerning claimant's wishes do not constitute "evidence,")[7] we would still conclude that the board's finding that Anderson was not claimant's attending physician is supported by substantial evidence. In affirming the ALJ's order, the board found that, although claimant initially consented to Anderson as her attending physician, claimant had decided to treat with Constien and that, when Constien was no longer willing to continue to treat claimant, claimant saw Anderson only once and only for the purpose of obtaining a referral for physical therapy, because she was required to do so by the MCO. The board further relied on a review of claimant's medical records. Based on that record, the board could find that Anderson was not the provider "primarily responsible" for claimant's

---

[7] *But see* ORS 656.283(6) ("[T]he Administrative Law Judge is not bound by common law or statutory rules of evidence or by technical or formal rules of procedure, and may conduct the hearing in any manner that will achieve substantial justice.").

treatment. Thus, we conclude that the board did not err in adopting and affirming the ALJ's finding that claimant did not have an attending physician at the time of claim closure and that, for that reason, the information was not sufficient under ORS 656.245(2)(b)(C) to allow the claim to be closed.

We next consider employer's contention in its third assignment that the board, in affirming the ALJ's order, erred in assessing a penalty under ORS 656.268(5)(f) for employer's unreasonable closure of the claim. The ALJ explained the rationale in support of the penalty:

> "Based on the evidence presented in this case, including [various exhibits that included claimant's medical records], I conclude that the employer's reliance on the findings and conclusions of Dr. Anderson to issue the September 10, 2018 Notice of Closure was unreasonable. Claimant consistently and adamantly stated to the employer and the WCD Medical Director that Dr. Anderson was not her treating physician, she did not consider him to be her treating physician, and she would not be returning to him for further medical care. *** Consistent with those statements, claimant did not treat with Dr. Anderson after July 27, 2018, and began treating with Dr. Kerfoot on September 26, 2018 ***. Contrary to employer's contention, claimant's written statements expressed highly relevant personal beliefs about who she considered to be her treating physician. Although claimant's beliefs were only part of the overall picture, her actions were consistent with those statements. Together, claimant's words and deeds left the employer with no legitimate doubt: Dr. Anderson was not her treating physician at the time of closure. Whether claimant's treating physician was Dr. Constien or she simply did not have a treating physician when the claim was closed, the employer's Notice of Closure was unreasonable because there was insufficient information available to close the claim. Therefore, claimant is entitled to a penalty if there was compensation due upon which to base that penalty."

The board affirmed that conclusion, emphasizing in its order on reconsideration that "employer's reliance on Dr. Anderson's opinion as claimant's attending physician in issuing its closure notice was unreasonable."

The evaluation of whether employer's closure was reasonable depends on whether it had a legitimate doubt

as to whether the claim could be closed. *Liberty Northwest Ins. Corp. v. Olvera-Chavez*, 267 Or App 55, 64, 339 P3d 928 (2014). "An insurer's conduct is not unreasonable if the insurer had a legitimate doubt about its liability." *Id.* Here, the focus is on whether it was unreasonable for employer to close the claim because employer had a legitimate doubt that Anderson was not the attending physician at the time of closure. Employer contends that its closure of the claim was reasonable in light of the information that it had at the time of closure concerning whether Anderson was claimant's attending physician, and that the board therefore erred in assessing a penalty.

We review the board's order assessing a penalty for whether the board applied the correct legal standard, and for whether its finding of reasonableness has substantial evidentiary support in light of the evidence available to employer at the time of claim closure. *Providence Health System v. Walker*, 252 Or App 489, 505, 289 P3d 256 (2012). We conclude that the board applied the correct legal standard, and that substantial evidence supports the board's finding that it was unreasonable for employer to close the claim because employer did not have legitimate doubt that Anderson was not the attending physician.

Employer first contends that the board erred because, in applying the reasonableness standard, the board "judged employer's actions in substantial part on information not available at the time." That is, employer contends that the board's reference to claimant's "words and deeds" and particularly its reference to her "beliefs" were based on the evidence of claimant's unexpressed personal beliefs about who she considered to be her treating physician, and that those beliefs did not reach employer. In context, we cannot agree with employer's reading of the ALJ's order, which was adopted by the board. We understand the entire order to refer to claimant's express statements and actions that were conveyed to the employer. Indeed, the order's discussion of the issue commences with the statement that claimant "consistently and adamantly expressed to the employer and the WCD Medical Director that Dr. Anderson was not her treating physician," and then concludes with explaining

how her conduct at the time confirmed those expressions of her belief.

Employer next contends that the order did not cite the standard for reasonableness or discuss whether employer had doubts that liability existed. We again disagree with employer's reading of the order. The board, in fact, used the "legitimate doubt" standard that both employer and claimant agree controls the issue here. It cited the relevant law and further applied the legitimate-doubt standard to the ultimate issue: whether employer could reasonably close the claim because it had legitimate doubt about Anderson's status as the "attending physician" as defined in ORS 656.005(12)(b). It then concluded that the evidence "left the employer with no legitimate doubt: Dr. Anderson was not [claimant's] treating physician at the time of closure."

Finally, employer contends that the board's order lacked substantial reason because it did not articulate the board's reasoning or explain how the facts led to the board's conclusion. *See Taylor v. SAIF*, 295 Or App 199, 203, 433 P3d 419 (2018) (stating that "an order is supported by substantial reason when it articulates the reasoning that leads from the facts found to the conclusions drawn" (internal quotation marks omitted)). Employer's argument is, again, premised on the contention that the board relied solely on claimant's personal beliefs and did not address how those beliefs outweighed other available information regarding who was claimant's attending physician. Having reviewed the order, we again disagree. As explained above, the board did not rely solely on claimant's beliefs, but explained how all of the evidence—including claimant's actions, her history with her doctors, and her medical records—made it unreasonable for the employer to believe that Anderson was the attending physician "primarily responsible" for claimant's treatment—or, in other words, expressed in the unfortunate double negative, that employer had no legitimate doubt that Anderson was not the attending physician. *See Liberty Northwest Ins. Corp.*, 267 Or App at 64 (stating "an insurer's conduct is not unreasonable if the insurer had a legitimate doubt about its liability").

In sum, based on the arguments presented to us and our review of the board's order, we conclude that the board did not err in assessing a penalty.

Affirmed.